UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Application of AIS GMBH AACHEN INNOVATIVE SOLUTIONS & ABIOMED EUROPE GMBH, Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thoratec LLC | Case No. 5:16-mc-80094-HRL<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORTS NOS. 1-4**<br><br>Re: Dkt. Nos. 38, 44, 45, 46, 47 |

## Introduction

Petitioners AIS GmbH Aachen Innovative Solutions and Abiomed Europe GmbH (collectively, "Abiomed") seek an order compelling Thoratec, LLC ("Thoratec") to produce discovery responsive to a subpoena this court authorized under 28 U.S.C. § 1782.

Abiomed holds the German parts of certain European patents covering intracardial blood pumps. The Abiomed pumps are said to have certain unique features, such as a magnetic clutch and a flexible projection called a pigtail tip. Abiomed is suing Thoratec in four separate patent actions in Germany, claiming that Thoratec's HeartMate PHP pumps contain all the limitations of the Abiomed patents in issue. Thoratec denies any infringement. To test that defense, Abiomed wants to obtain samples of the accused products to see exactly how they work.

To that end, Abiomed petitioned this court for an order authorizing discovery. Section 1782 authorizes that, upon the application of an "interested person," this Court may order any person in this District to produce documents or give testimony "for use" in a proceeding in a foreign or international tribunal. The court found that Abiomed's request complied with the statute, met the factors to be considered under section 1782, and allowed the subpoena. Basically, the subpoena sought 5 sample HeartMate PHP devices along with an operating console and any required hardware, technical drawings and specifications, documents to and from any regulatory body, plus safety and testing information. Thoratec did not move to quash the subpoena, but it objected and refused to produce anything.

Trying for a compromise, Abiomed dialed back the scope of the subpoena: 3 HeartMate PHP devices, a controller to operate the devices (on a 30 day loan), 3 of any other products or hardware needed to operate them, and instructions for use. Thoratec said "no," and suggested that Abiomed should be satisfied with product specifications.

## **Discovery Dispute Joint Report #1 (Dkt. 44)[1]**

In Discovery Dispute Joint Report ("DDJR") #1, Abiomed asks for an order compelling Thoratec to turn over what it offered to take in compromise: the 3 HeartMate PHP devices, controller, necessary hardware, and operating instructions.

In opposition, Thoratec says, without offering any actual data, that supply is limited and giving 3 HeartMate PHP's to Abiomed would mean forgoing or delaying treatment for 3 heart patients who need one. Apparently, the HeartMate devices are in use in Europe, and there is a clinical trial going on in the United States. Thoratec foresees a "potential disruption to obtaining clinical data necessary for regulatory approval." Anyway, says Thoratec, Abiomed would get everything it wants to know from documents (which had not been produced) without imposing on Thoratec the "undue burden" of giving up three of the actual devices. Furthermore, Thoratec argues that Abiomed failed to avail itself of certain limited discovery procedures that were,

---

[1] Abiomed initially filed a unilateral discovery report (Dkt. 38), which was met with objections by Thoratec. The parties subsequently submitted the matter in a joint report, and it is the joint report that this court addresses.

2

reportedly, available under German law, so it is not fair that it wants to take advantage of more liberal discovery opportunities in this court.

Abiomed says it would gladly buy three of the devices, but they are not on offer anywhere. Thoratec was asked but is "mum" on where or how the devices might be purchased. And, Abiomed argues that it really needs to see just how the mechanical devices operate, an insight it would not get from looking at specifications.

None of Thoratec's arguments are persuasive. Surely, Abiomed should have samples of the allegedly infringing devices, and the only place it can get them is from Thoratec. Abiomed is not playing unfair by skipping what little discovery might be available to it under German law. The "undue burden" argument is painfully short of factual support (i.e., what is the weekly output of new devices, what is the inventory stock, what quantities are needed going forward, and the like?)

Thoratec must produce to Abiomed what it has requested.

## Discovery Dispute Joint Report #2 (Dkt. 45)

In DDJR #2 the parties, in anticipation that the court might order Thoratec to turn over to Abiomed samples of the accused device, disagree on whether there should be a protective order and, if so, what should it say about who on Abiomed's side gets to see the device.

Thoratec contends that the devices contain "commercially sensitive, technical information" that would put Thoratec at a commercial disadvantage if the devices were disclosed to the wrong people. It seeks a protective order that would drastically limit access to the devices, including, for example, excluding even the Abiomed lawyers in the German patent lawsuits.

On the other hand, Abiomed argues that no protective order at all is needed because Thoratec admits that they are being sold in Europe (presumably, to doctors and hospitals) for use in patients. And, the device is undergoing clinical trials in the United States. Significantly, Thoratec does *not* claim that anyone who has bought or acquired the HeartMate PHP was required to sign a non-disclosure agreement. Thus, says Abiomed, the devices are in the public domain and do not warrant any protective order.

Thoratec's protestations about the importance of protecting its device from prying eyes

ring somewhat hollow when the court compares that argument with its previous assertion back when it responded to Abiomed's subpoena. In Thoratec's Objections and Responses to Subpoena one of its grounds for objecting to turn over sample devices was that it would be "less burdensome for Petitioners to obtain the requested samples elsewhere, for example, in Europe, where the HeartMate PHP product has been approved and sold." (Dkt. 45-2, DDJR #2, Ex. B at ECF p. 8). If the technology in the device was really as sensitive as Thoratec would now have this court believe, why was Thoratec simply urging Abiomed to go out in the market and buy some? Apparently, it was only after Abiomed was unable to find a seller (Thoratec could not or would not identify one) and so turned to Thoratec that Thoratec raised the spectre of harm on account of disclosure of sensitive technology.

On the bare record presented, the court is not prepared to rule that the HeartMate PHP device is now in the public domain and that no protective order at all is necessary. Fortunately, the court does not have to reach that issue because Abiomed agrees to a protective order that gives significant protection to unwarranted disclosure of Thoratec's device. Each side has submitted a version of a protective order. The court declines to accept Thoratec's version, which is much too restrictive. It accepts Abiomed's version, except only that its request to add the words "or public use" in Section 3, "Scope", line 14 is denied. (Dkt. 45-2, Ex. A [Proposed] Protective Order).

Abiomed shall submit a clean copy of the protective order for the court's signature.

## Discovery Dispute Joint Report #3 (Dkt. 46)

In DDJR #4 Thoratec advises the court that there have been certain rulings in the German courts (and one in England as well) on patent validity that were adverse to Abiomed, and Thoratec urges the court to deny any discovery because it would just be a waste of time. If one were to analogize the Abiomed lawsuits to a patient in a hospital, Thoratec is telling the court that the patient is on life support and has been given last rites. On the other hand, Abiomed says, in effect, that the patient had a temporary setback, but is well on the road to recovery.

The court is unable to judge which side's telling is the more accurate. The parties offer a confusing description of what are the latest happenings in the German actions, and the court freely acknowledges its lack of any knowledge of German law or procedural rules in patent cases. There

seems to be no doubt that Abiomed's lawsuits have stalled, some matters are on appeal and others have been stayed (maybe for months, possibly longer). But, it is also apparent that none of them are over finally, completely, and for good.

The authorities cited by Abiomed are more on point and persuasive than those cited by Thoratec. The factors that the court weighed and considered in allowing the subpoena have not changed. The requirement that the sought-after discovery must be "for use" in foreign litigation has been interpreted broadly, and that test can even be met if the litigation is only reasonably *contemplated.* The litigation in Germany is long past just being contemplated and it is certainly not over.

Thoratec repeats its now familiar argument that producing samples would involve more burden than it should have to shoulder given the present situation. But, Thoratec has never persuasively made a case for any burden at all, and---if its HeartMate PHP does not infringe---what is wrong (with a robust protective order in place) in demonstrating that to Abiomed through the sample devices? In other words, on balance the discovery should go forward.

### **Discovery Dispute Joint Report #4 (Dkt. 47)**

DDJR #4 arises out of a recent development. A patient in Europe died following an apparent malfunction of a HeartMate PHP, and, as a consequence, Thoratec suspended the United States clinical trial and (maybe) stopped selling the device in Europe. This development negates Thoratec's contention (see DDJR #1) that every single HeartMate PHP it manufactured was needed by some worthy patient and none could be spared to give to Abiomed. The reader will recall that the court did not find that contention persuasive.

Now, Thoratec has a new argument. Every single HeartMate PHP that it has or can acquire is needed in order to figure out whether or why one failed to measure up. Giving three of them to Abiomed, it says, will impose an unacceptable burden by disrupting its "failure analysis and further testing of solutions to the pump stoppage issue." This argument seems even less plausible than the previous one, and the court rejects it.

## Conclusion

Within ten days after the court enters the protective order, Thoratec will turn over to Abiomed 3 HeartMate PHP devices, with 3 each of any associated hardware or accessories, a console to control the devices (loaned for 30 days), and all instructions for use.

SO ORDERED.

Dated: April 21, 2017

HOWARD R. LLOYD
United States Magistrate Judge